## STATE OF CONNECTICUT *v.* DAVID KNIGHT
## (AC 30145)

Harper, Robinson and Bear, Js.

Argued September 8—officially released November 23, 2010

*David V. DeRosa*, special public defender, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Adam Scott*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, David Knight, appeals from the judgments of conviction, rendered after a jury trial, of one count of operating a motor vehicle with a

suspended license in violation of General Statutes § 14-215 (a),[1] one count of improper use of a marker plate in violation of General Statutes § 14-147 (c),[2] one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 and one count of failure to appear in the second degree in violation of General Statutes § 53a-173. We affirm the judgments of the trial court.[3]

The jury reasonably could have found the following facts. On the morning of September 4, 2003, Brian Jolda, an officer with the East Hartford police department, observed a gray Nissan pickup truck that appeared to display an improper license plate. Jolda proceeded to stop the vehicle. After the truck came to a complete stop, Jolda approached the truck, which was operated by the defendant. After investigation, Jolda determined that the defendant had been driving the vehicle (1) with

---

[1] General Statutes § 14-215 (a) provides: "No person to whom an operator's license has been refused, or, except as provided in section 14-215a, whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked."

[2] General Statutes § 14-147 (c) provides: "No person shall use any motor vehicle registration or operator's license other than the one issued to him by the commissioner, except as provided in section 14-18; and no person shall use a motor vehicle registration on any motor vehicle other than that for which such registration has been issued. Any person who violates any provision of this subsection shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both."

[3] The defendant also had a separate trial to the court on charges of operating an unregistered motor vehicle in violation of General Statutes § 14-12 (a) and operating a motor vehicle without insurance in violation of General Statutes § 14-213b, for which he was also convicted. Because neither of the defendant's claims provide a basis for reversing the conviction on the charges that were tried to the court, we conclude that that conviction must stand even if the defendant prevails on his appellate claims. Accordingly, we do not address in this opinion the conviction on the charges tried to the court.

an improper passenger class marker plate, (2) with a suspended driver's license, (3) without proof of insurance and (4) without a valid registration. He issued a misdemeanor summons and complaint charging the defendant with improper use of a marker plate, operating a motor vehicle with a suspended license, operating an unregistered motor vehicle and operating a motor vehicle without insurance.

On October 6, 2003, the defendant appeared in court to request a continuance of approximately one month so that he could address an apparent mistake by the department of motor vehicles (department) regarding his license suspension. The defendant asserted that he had done everything necessary to have the department restore his suspended license. The defendant further contended that the department had two license numbers issued in his name, one license number having been restored and the other having been suspended. The court continued the matter to November 3, 2003, wherein the defendant appeared to request a continuance so that he could retain counsel. At that hearing, the court continued the matter to December 8, 2003. The defendant failed to appear, however, on December 8, causing the court, upon the prosecution's request, to order him to be rearrested. The defendant subsequently turned himself in, and the court set bond at $1500.

On September 9, 2004, the defendant posted bond and was released. Later that day, the defendant had his sister drive him to a health care facility in East Hartford in order to visit Sherelle Owens, the mother of his baby. Owens was employed by the facility as a dietary aide. Owens had just arrived to begin her work shift there when the defendant appeared by the side of her vehicle. At that time, Owens was in the driver's seat of her vehicle. While the defendant was outside of the vehicle, he demanded that Owens give to him her house keys so that he could go to her house to change his clothes.

Owens refused to give the defendant her house keys. Owens attempted to get out of her vehicle but the defendant was in her way. A witness at the scene of the incident called the police, complaining that the defendant had been hitting Owens. Anthony Piacenta, an officer with the East Hartford police department, arrived at the scene in response to the complaint. The defendant subsequently was arrested and charged with one count each of breach of the peace in the second degree and unlawful restraint in the second degree. These charges were joined with the previous motor vehicle charges, and trial was set to begin on March 9, 2005. After a two day jury trial, the defendant was convicted on all counts except unlawful restraint in the second degree.[4] The jury found him not guilty of that charge. The defendant now appeals from his convictions.[5] Additional facts will be set forth as necessary.

I

The defendant first claims that the court deprived him of his right to a jury trial pursuant to the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution.[6] Specifically, he claims that defense counsel's stipulations to certain facts at trial constituted a waiver of his right to a jury trial and that he therefore was entitled to be canvassed by the judge in open court

---

[4] See footnote 1 of this opinion.

[5] Before filing this direct appeal, the defendant filed a pro se petition for a writ of habeas corpus, alleging that his trial counsel was ineffective. After a hearing on the matter, the habeas court, A. Santos, J., denied all of the defendant's claims except the claim that his trial counsel failed to perfect the defendant's right to appeal. The court thereafter restored the defendant's appellate rights. The defendant did not appeal the habeas court's decision.

[6] To the extent that the defendant has asserted a claim under the constitution of Connecticut, he has failed to provide an independent analysis of that claim. See State v. Geisler, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (providing tools for independent analysis under state constitution). We therefore confine our analysis to the defendant's federal constitutional claim.

to ensure that his waiver was knowing, intelligent and voluntary. Because the defendant did not preserve this claim at trial, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Foreman*, 288 Conn. 684, 693 n.6, 954 A.2d 135 (2008).

Our review of the record indicates that the facts are sufficiently clear and unambiguous for this court to determine whether a constitutional violation has occurred. Furthermore, the second prong of *Golding* is satisfied because the right to a jury trial in a criminal case is a constitutionally protected right under the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. As to the third prong of *Golding*, we must inquire whether the alleged constitutional violation clearly exists and, if so, whether it clearly has deprived the defendant of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40.

The following additional facts are relevant to our inquiry. At various points during the trial, defense counsel stipulated to certain facts pertaining to the charges

of operating a motor vehicle with a suspended license and improper use of a marker plate. With regard to the charge of operating a motor vehicle with a suspended license, defense counsel stipulated as follows:

"[Defense Counsel]: We'll stipulate that the license was suspended.

"The Court: Okay. All right, ladies and gentlemen, you may take that as [a] proven fact that the defendant was aware that his, no, I'm sorry, that the defendant's license was under suspension on the date of operation, which is September 4, 2003.

"[Defense Counsel]: That's correct. We'll stipulate to that. . . . Your Honor, we've already stipulated that the license is suspended. What's the relevance—

"The Court: The state also has to prove that the defendant received notice.

"[Defense Counsel]: You answered it, okay. . . .

"[The Prosecutor]: Stipulating that the defendant had notice?

"[Defense Counsel]: Yes.

"The Court: You're stipulating that the defendant had notice that his license was under suspension—

"[Defense Counsel]: Absolutely.

"The Court:—on September 4, 2003?

"[Defense Counsel]: That's correct."

With regard to the charge of improper use of a marker plate, defense counsel stipulated as follows:

"[Defense Counsel]: Your Honor, we stipulate that the license plate [the defendant] used, it was an improper use of a plate. We'll stipulate to that.

"The Court: Okay, so you're stipulating that the marker plate attached to the vehicle that he was operating on September [4], 2003, was not the plate registered to that vehicle?

"[Defense Counsel]: That's correct, Your Honor.

"The Court: Okay. All right. So, ladies and gentlemen, you may take that as a given and proven fact by the state."

The defendant claims that the above stipulations were sufficient to satisfy every element of both of the charged offenses, resulting in a waiver of his right to a jury trial on those offenses. We note that the defendant has not advanced any legal argument to support this claim. The defendant only makes conclusory statements to the effect that, because defense counsel stipulated to facts sufficient to satisfy all of the elements of those two charged offenses, the jury was left with nothing more to decide.

The sixth amendment to the United States constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." The sixth amendment right to a jury trial is made applicable to the states through the due process clause of the fourteenth amendment. See *Duncan* v. *Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). The jury has a constitutional responsibility not merely to determine the facts, but also *to apply the law to those facts and to draw the ultimate conclusion of guilt or innocence. United States* v. *Gaudin*, 515 U.S. 506, 514, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). Consequently, it is often necessary for "the trier of fact to determine the existence of an element of the crime—that is, an ultimate or elemental

fact—from the existence of one or more evidentiary or basic facts . . . ." (Internal quotation marks omitted.) Id., 515. Our courts have long recognized that the jury's function is to apply the law to the facts; it is for this reason that we have consistently stated that "the principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 462, 590 A.2d 112 (1991). It necessarily follows, therefore, that when a defendant waives his constitutional right to a jury trial, he waives not only his right to have a jury find the facts but also to have a jury apply the law to those facts.

In the present case, it was the function of the jury to find the facts and to determine the existence of the elements of the crimes by applying the law to those facts. The defendant has failed to demonstrate how the stipulations deprived him of his right to have the jury apply the law to the facts. Even if we were to assume, arguendo, that the stipulations divested the jury of its fact-finding function, it nevertheless was required to apply the law to those stipulated facts. In fact, at the conclusion of trial, the judge instructed the jury as to the law and directed the jury to apply the law to the facts as found. Because we conclude that defense counsel's stipulations did not remove from the jury its constitutional function to apply the law to the facts found, we conclude that the defendant was not deprived of a jury trial and therefore has failed to satisfy the third prong of *Golding*.

## II

Finally, the defendant claims that the court's reasonable doubt instruction deprived him of a fair trial. Specifically, he claims that the court's instruction

impermissibly diluted the presumption of innocence and reduced the state's burden of proof. We disagree.

In its charge, the court instructed the jury concerning the presumption of innocence and the state's burden to prove guilt beyond a reasonable doubt. Concerning the definition of reasonable doubt, the court instructed: "Now, what is a reasonable doubt? *A reasonable doubt means a doubt founded upon reason or common sense. As the words imply, it is a doubt held by a reasonable person after all the evidence in the case is carefully analyzed, compared and weighed. A reasonable doubt may arise not only from the evidence produced but also from the lack of evidence. Since the burden is upon the state to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon a failure of the prosecution to establish such proof.*

"A reasonable doubt however, is a doubt based upon more than a guess or a surmise. If, therefore, on all the evidence, you have a reasonable doubt as to the guilt of the defendant, you must find him not guilty.

"Absolute certainty, however, in the affairs of life is almost never attainable. And the law does not require absolute certainty on the part of the jury before you return a verdict of guilty.

"The state does not have to prove guilt beyond all doubt or to a mathematical certainty or to an absolute moral certitude. Nor does the requirement of proof beyond a reasonable doubt mean that the proof must be beyond any possible doubt. A possible doubt or a possible hypothesis or a possible supposition of innocence is far different from a reasonable doubt.

"Emphasis needs to be placed on the distinction between the word 'reasonable' and the word 'possible.'

Proof of guilt must exclude every reasonable supposition of innocence. However, proof of guilt need not exclude every possible supposition of innocence.

*"A possible supposition or a possible hypothesis of innocence is not a reasonable doubt. A reasonable doubt is not a doubt raised by one who questions for the sake of raising a doubt. A reasonable doubt is not surmise, or speculation, conjecture or an imaginary doubt. Nor a doubt which is unwarranted by the evidence. Nor is it a doubt prompted by sympathy for the accused. What the law requires, therefore, is, after hearing all the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted.* On the other hand, if there is no reasonable doubt, then the accused must be found guilty." (Emphasis added.)

The defendant asserts that the portions of the court's reasonable doubt instruction that appear in italics in the preceding paragraphs improperly diluted the presumption of innocence and reduced the state's burden of proof. Specifically, he argues that the instruction (1) did not convey adequately the severity of the doubt that had to be eliminated to find him guilty and the care that the jury must exercise in deliberations and (2) excessively defined reasonable doubt in the negative. The defendant did not preserve this claim at trial and now seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

The claim is reviewable under *Golding* because the record is adequate for review and the claim that the court's reasonable doubt instruction diluted the state's burden of proof is of constitutional magnitude. See *State* v. *Alberto M.*, 120 Conn. App. 104, 115, 991 A.2d 578

(2010). "In determining whether a trial court's charge satisfies constitutional requirements . . . individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 206, 749 A.2d 1192 (2000).

Although his claim is reviewable, we conclude that the defendant cannot satisfy the third prong of *Golding*. The court's instruction regarding the presumption of innocence and reasonable doubt is the same or similar to jury instructions that have been approved by both the Supreme Court and this court consistently. See, e.g., *State* v. *Davis*, 283 Conn. 280, 334–36, 929 A.2d 278 (2007); *State* v. *Alberto M.*, supra, 120 Conn. App. 113–16; *State* v. *Bivrell*, 116 Conn. App. 556, 562–66, 976 A.2d 60 (2009), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010); *State* v. *Andrews*, 29 Conn. App. 533, 539–41, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993); *State* v. *Boykin*, 27 Conn. App. 558, 572–73, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Contrary to the defendant's contention, when read in its entirety, the charge adequately conveyed the severity of the doubt that had to be eliminated to find the defendant guilty and the care that the jury was to exercise in its deliberations. Furthermore, in

*State* v. *Boykin,* supra, 558, we rejected a constitutional challenge to an instruction that defined reasonable doubt in the negative. The court in the *Boykin* case instructed the jury in relevant part: "A reasonable doubt is *not* a doubt raised by one who questions for the sake of raising a doubt. A reasonable doubt is *not* a surmise or speculation or conjecture or an imaginary doubt. A reasonable doubt is *not* a captious or frivolous doubt *nor* is it a doubt raised by the ingenuity of counsel or by a juror and unwarranted by the evidence; *nor* is it a doubt prompted by sympathy for the defendant." (Emphasis altered.) Id., 572. The instructions given in this case, even where they deviate from the previously approved language, when viewed in the context of the entire charge, did not dilute the defendant's presumption of innocence or reduce the state's burden of proof. Because we find neither a clear violation of a fundamental constitutional right nor a deprivation of a fair trial arising out of the challenged instructions, the defendant cannot prevail on this unpreserved claim.

The judgments are affirmed.

In this opinion the other judges concurred.