STATE OF CONNECTICUT *v.* NEMIAH ALLAN
(AC 32125)

DiPentima, C. J., and Alvord and Espinosa, Js.

Argued April 12—officially released September 20, 2011

*Katherine C. Essington,* special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Nemiah Allan, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 and 21a-278 (b).[1] On appeal, the defendant claims that the trial court improperly denied his motion for a judgment of acquittal. Specifically, he argues that the evidence was insufficient to sustain his conviction, and, therefore, he was deprived of his federal due process rights.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of April 15, 2009, the defendant was under surveillance by the Meriden police department, which was working in conjunction with agents of a Drug Enforcement Agency task force. The law enforcement officers, in unmarked cars, observed the defendant on Maple Street engaging in drug related activity.[3] The officers also observed the defendant make

---

[1] The jury found the defendant not guilty of illegal sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), sale of narcotics within 1500 feet of a school in violation of General Statutes § 21a-278a (b), and possession of narcotics in violation of General Statutes § 21a-279 (a). The defendant does not appeal his conviction on the charge of interfering with an officer in violation of General Statutes § 53a-167a, and, therefore, we do not address that conviction here.

[2] The defendant also claims that his rights were violated under article first, § 8, of the constitution of Connecticut, but fails to provide the analysis required by *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). We, therefore, do not review this claim. See *State* v. *Knight*, 125 Conn. App. 189, 194 n.6, 7 A.3d 425 (2010), cert. denied, 300 Conn. 927, 16 A.3d 704 (2011).

[3] Officer Michael Fonda testified that he was part of a team surveilling the defendant and that, based on his training and experience, he believed the defendant to be engaged in drug related activity. The surveillance team observed the defendant talking on a cell phone and pacing up and down the street. The team further observed as vehicles would pull up to the

a specific drug transaction with a man in a white van where money was provided to the defendant, who then entered the "stash house" on Maple Branch before returning to the van.[4] The police followed the van and stopped its driver, Humberto Zarabozo, who told police that he had purchased crack cocaine from the defendant. The police recovered the crack cocaine from the van and subsequently arrested Zarabozo. The officers returned to their posts in the Maple Street area to observe the defendant further and again saw him engaged in activity consistent with drug dealing.

The law enforcement officers observed the defendant talking on a cell phone. Thereafter, they observed an Acura pull up outside 10 Maple Branch. The Acura flashed its lights, after which the defendant crossed the street and approached the passenger side of the vehicle. The defendant opened the door, causing the dome light to illuminate, so that he could lean into the vehicle through the open door to talk to the driver. After the defendant spoke to the Acura's driver for several minutes, the Acura departed Maple Branch. The officers followed the Acura and returned to the scene approximately one to two hours later to arrest the defendant.

When the police approached the defendant to arrest him, he resisted and attempted to flee the scene. The police subdued the defendant, arrested him, and read him his *Miranda* rights.[5] The defendant subsequently

corner of Randolph Avenue and West Main Street, where the defendant was standing. Fonda testified that the defendant would approach a vehicle and engage in "some sort of transaction" with the driver. Subsequently, the defendant would enter a suspected stash house at 20 Maple Branch while the driver's vehicle idled. The defendant would return to the vehicle, which, thereafter, would drive off, leaving the defendant to return to his position on the corner until the next vehicle approached.

[4] The police raided the stash house at 20 Maple Branch subsequent to the defendant's arrest and found quantities of crack cocaine packaged for street sale as well as drug paraphernalia.

[5] See *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

told the police that the driver of the Acura went by the street name of "Fleet" and that Fleet had come to Maple Branch to "resupply" the defendant with crack cocaine, although he did not deliver the crack cocaine as promised.[6] The police were familiar with the name Fleet, as he was a known drug supplier. The defendant also provided the police with Fleet's cell phone number, which was the last outgoing call on a cell phone in the defendant's possession. The defendant then led the police to a nearby gas station to identify Fleet's girlfriend, Brandy Clayton. Using information gleaned from the defendant and Clayton, the police apprehended Fleet, whose real name is Kareem Thomas. The defendant was transported to the police station where he asked the booking officer what had happened to the "big fat white guy." The booking officer testified that when he asked the defendant to whom he was referring, the defendant replied, "the one that I sold drugs to," presumably meaning Zarabozo.

The state charged the defendant with illegal sale of narcotics by a person who is not drug-dependent, sale of narcotics within 1500 feet of a school, possession of narcotics, conspiracy to sell narcotics by a person who is not drug-dependent, and interfering with an officer. The case was tried before a jury on December 2 and 3, 2009. Defense counsel made a motion to the trial court for a judgment of acquittal, which the court denied. The jury returned a verdict finding the defendant not guilty on the charges of sale of narcotics, sale of narcotics within 1500 feet of a school, and possession of narcotics and found him guilty of conspiracy to sell narcotics and

---

[6] On direct examination, Detective John Williams of the Meriden police department testified as follows:

"[The Prosecutor]: Did [the defendant] indicate to you anything about the interaction on Maple Branch between him and Fleet?

"[Detective Williams]: He stated that Fleet was supposed to resupply him.

"[The Prosecutor]: Resupply him with what?

"[Detective Williams]: Ah, crack cocaine."

interfering with an officer. Following the jury's verdict, the court sentenced the defendant to a total effective term of twelve years incarceration. This appeal followed.

The defendant claims that the trial court should have granted his motion for a judgment of acquittal because there was insufficient evidence to allow the jury to find him guilty beyond a reasonable doubt of the crime of conspiracy to sell narcotics. First, he argues that there was insufficient evidence to prove that he and his coconspirator, Thomas, had an agreement to further distribute the narcotics. Second, he argues that the state failed to prove that he or his coconspirator committed an overt act in furtherance of the conspiracy. Both claims are without merit.

In reviewing sufficiency of the evidence claims, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jennings*, 125 Conn. App. 801, 805–806, 9 A.3d 446 (2011). "On appeal, we do not ask

whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 93 Conn. App. 739, 749, 890 A.2d 591 (2006), appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007).

"To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. . . . The state is also obligated to prove that the accused intended that conduct constituting a crime be performed. . . . [I]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands or uttered the words we have an agreement. . . . Indeed, [b]ecause of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. . . . [A] conspiracy can be inferred from the conduct of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 167–68, 726 A.2d 132 (1999), cert. denied, 248 Conn. 918, 734 A.2d 567 (1999).

Section 53a-48 (a) sets forth the elements of the crime of conspiracy. The state bore the burden of proving beyond a reasonable doubt that the defendant (1) with intent that conduct constituting a crime be performed, (2) agreed with one or more persons to engage in or cause the performance of such conduct, and (3) any one of them committed an overt act in pursuance of such conspiracy. See General Statutes § 53a-48 (a).

The defendant first claims that the evidence is insufficient because the state failed to prove beyond a reasonable doubt that he had an agreement with Thomas in

the past to distribute narcotics or to distribute narcotics in the future. In other words, he argues that the state did not prove that the agreement provided some additional benefit to Thomas in his selling the drugs to the defendant. The defendant misunderstands the elements of the crime of conspiracy. Here, the defendant admitted that he called Thomas on a cell phone and made arrangements for Thomas to resupply him with crack cocaine, which the defendant intended to resell. Thomas then drove to Maple Branch to meet the defendant and, once he arrived, flashed the lights of the Acura to signal the defendant to approach the vehicle. The defendant's statements show that he had intent to buy narcotics from Thomas and that the defendant made arrangements with Thomas to be resupplied with crack cocaine. That agreement, in concert with an overt act, which is the subject of the defendant's second claim, is sufficient under Connecticut law to constitute a conspiracy. There are no elements enumerated in § 53a-48 (a) requiring the state to prove any future or past criminal acts in order to prove the crime of conspiracy.

Despite the fact that the state did not have a burden to prove that the defendant engaged in a past conspiracy or a future conspiracy to sell narcotics with Thomas, the defendant argues that we should adopt the so-called federal "buyer-seller exception" in evaluating charges of conspiracy to sell narcotics. Under the federal exception, "the seller cannot be considered to have joined a conspiracy with the buyer to advance the buyer's resale unless the seller has somehow encouraged the venture or has a stake in it—an interest in bringing about its success." *United States* v. *Parker*, 554 F.3d 230, 235–36 (2d Cir.), cert. denied sub nom. *Baker* v. *United States*, 558 U.S. 965, 130 S. Ct. 394, 175 L. Ed. 2d 301 (2009). The government must prove that there exists a "*shared* intention between the transferor and the transferee that further transfers occur." (Emphasis in original.) Id., 236.

The defendant has not provided a single Connecticut case endorsing the so-called "buyer-seller exception," and we decline to apply such an exception in evaluating the defendant's claim.

Second, the defendant claims that we should find the evidence insufficient because the state failed to prove beyond a reasonable doubt that there was an overt act committed in furtherance of the conspiracy. The defendant claims that because the meeting between the defendant and Thomas resulted in the breakdown of their agreement, Thomas' drive to Maple Branch and flashing of the Acura's lights, and the defendant's subsequent discussion with Thomas cannot qualify as overt acts in furtherance of the conspiracy. We disagree.

"In a conspiracy prosecution, the government is not limited to proof of only those overt acts charged in the indictment and in fact need not prove every overt act alleged." (Internal quotation marks omitted.) *State* v. *Forde*, supra, 52 Conn. App. 169–70. "An overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator." *State* v. *Elijah*, 42 Conn. App. 687, 697, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996). Further, an overt act need not be a criminal act in and of itself. See *State* v. *McLaughlin*, 132 Conn. 325, 340, 44 A.2d 116 (1945).

"[T]he probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Moreover, [i]n considering the evidence introduced in a case, [triers of fact] are not

required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts at hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State v. Jennings*, supra, 125 Conn. App. 811.

In construing the evidence in the light most favorable to sustaining the verdict, the defendant's own statements show that there was an agreement with Thomas by which Thomas would "resupply" the defendant with crack cocaine. The defendant told the police that his meeting with Thomas that evening was for the specific purpose of being resupplied with crack cocaine and that Thomas was his drug supplier from Waterbury. The defendant admitted calling Thomas on his cell phone, and, thereafter, Thomas drove to Maple Branch in his Acura, flashing his lights to signal the defendant to approach the vehicle. The defendant approached the Acura, and the two men spoke, with the defendant leaning in the Acura through the open door of the car. According to the defendant, Thomas failed to resupply him with crack cocaine as planned. Upon the facts so construed and the inferences reasonably drawn therefrom, the finder of fact reasonably could have concluded that Thomas' drive to Maple Branch, his subsequent flashing of the Acura's lights, the defendant's walk to the Acura, and any discussion following between the defendant and Thomas were all overt acts in furtherance of the conspiracy. It is both reasonable and logical for the jury to have reached such conclusions.

The defendant's argument that he and Thomas had a breakdown in their agreement, which occurred when Thomas failed to resupply the defendant with crack cocaine as planned, is irrelevant. Under Connecticut

law, a breakdown of an agreement does not end the conspiracy. Section 53a-48 (b) provides that, once the state has proved the elements of the crime, the only defense to a conspiracy charge is renunciation, that is, "the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." The defendant made no argument that he attempted to thwart the conspiracy. Thus, even if a breakdown of the agreement did occur, such a breakdown would not disqualify the previously enumerated overt acts. Accordingly, the defendant's final argument has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.