******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH S. ELDER *v.* 21ST CENTURY MEDIA
NEWSPAPER, LLC, ET AL.
(AC 42779)

Bright, C. J., and Alvord and Bellis, Js.

*Syllabus*

The plaintiff attorney sought damages from the defendant reporter, K, and
the defendant publishers for, inter alia, defamation in connection with
an article written by K and articles published by the publishers. The
articles concerned a Superior Court decision that resulted in the plain-
tiff's one year suspension from the practice of law for a violation of
the Rules of Professional Conduct. The defendants filed motions for
summary judgment claiming that, as a matter of law, the published
matter was not actionable because the plaintiff's claims were barred by
the fair report privilege, which applies to the publication of defamatory
matter in an accurate report of an official action or proceeding. The
trial court granted the defendants' motions for summary judgment and
rendered judgment thereon, from which the plaintiff appealed to this
court. *Held* that the trial court properly rendered summary judgment
in favor of the defendants: this court declined to address the plaintiff's
unpreserved claim that the evidence supporting the defendants' motions
was insufficient because it was improperly authenticated, as that claim
was not raised before the trial court; moreover, the plaintiff's claim that
the defendants failed to submit proof of their reliance on a government
document as the source of the articles was unavailing because the
defendants were not required to submit such proof to avail themselves of
the fair report privilege and the articles were protected by that privilege
because they conveyed substantially fair, true and accurate accounts
of an official action or proceeding, as they contained language that was
substantially similar to that of the court decision, the defendants were
not required to conduct an impartial investigation as to the underlying
facts of that decision, and their omission of facts that might have placed
the plaintiff under less harsh public scrutiny and the inclusion of a
quotation that was not attributed to a government document or proceed-
ing did not render the articles substantially inaccurate; furthermore, the
plaintiff's claims of malice failed as a matter of law because the defen-
dants were not required to submit evidence to rebut his claims of malice
because the articles were fair and accurate abridgments of the court
decision, and the plaintiff's state constitutional law claims were not
considered because they were inadequately briefed, and any rights under
the state constitution did not defeat and were not inconsistent with the
fair report privilege.

Argued January 13—officially released May 4, 2021

*Procedural History*

Action to recover damages for, inter alia, defamation,
and for other relief, brought to the Superior Court in
the judicial district of Hartford, where the court, *Noble,
J.*, granted the motions for summary judgment filed by
the named defendant et al., and rendered judgment
thereon, from which the plaintiff appealed to this court.
*Affirmed.*

*Joseph S. Elder*, self-represented, the appellant
(plaintiff).

*William S. Fish, Jr.*, with whom was *Alexa T. Mill-
inger*, for the appellees (named defendant et al.).

*Christopher M. Wasil*, with whom, on the brief, was
*Michael D. Blanchard*, for the appellee (defendant CBS

Radio, Inc.).

*Opinion*

BELLIS, J. The issue in this case is the extent to which reporters and news publishers are protected from civil liability for defamation when reporting on a court decision that described the outcome of disciplinary proceedings against an attorney and the basis for those proceedings. The plaintiff, Joseph S. Elder, appeals from the summary judgment rendered by the trial court in favor of the defendants 21st Century Media Newspaper, LLC; 21st Century Media, LLC; CBS Radio, Inc., as successor in interest to CBS Corporation; Matthew Kauffman; and The Hearst Corporation (defendants)[1] on the basis of the fair report privilege. On appeal, the plaintiff claims that (1) the evidence supporting the defendants' motions for summary judgment was insufficient, (2) the defendants failed to demonstrate actual reliance on a government document or proceeding, (3) the court erred by finding that the defendants' publications were fair and accurate accounts of the government document on which they claimed to have relied, (4) the defendants did not rebut his claims of malice, which entitled him to a trial on the merits of those claims, and (5) his right under article first, § 10, of the Connecticut constitution to redress for injuries to his reputation and his right to a trial by jury on that claim, defeat the fair report privilege. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's claims on appeal. The plaintiff is an attorney licensed to practice law in Connecticut. On March 2, 2015, the Office of Disciplinary Counsel commenced an action in the Superior Court against the plaintiff (disciplinary action) alleging violations of several provisions of the Rules of Professional Conduct. The disciplinary action arose from two phone calls made in 2004, during which, according to the Office of Disciplinary Counsel, the plaintiff misrepresented his identity to an individual he later discovered to be a police officer conducting an investigation regarding certain legal advice that the plaintiff allegedly had given to a client, who was a suspect in a separate investigation (suspect). See *Disciplinary Counsel* v. *Elder*, Superior Court, judicial district of Hartford, Docket No. CV-15-6057682-S (July 29, 2015), rev'd, 325 Conn. 378, 159 A.3d 220 (2017). The court, *Robaina, J.*, found by clear and convincing evidence that the plaintiff had misrepresented himself to that police officer by claiming to be Wesley Spears, another Connecticut attorney, in violation of rule 4.1 of the Rules of Professional Conduct. Accordingly, the court rendered judgment suspending the plaintiff from the practice of law for a period of one year (suspension decision).

On August 1, 2015, the Hartford Courant published an article titled, "Attorney Suspended for a Year." M. Kauffman, "Attorney Suspended for a Year," Hartford

Courant, August 1, 2015, p. B1. That article was written by Kauffman, and it summarized the suspension decision. The opening paragraph read, "Joseph Elder, a Hartford attorney who impersonated a fellow lawyer 11 years ago, spawning a long-running feud between the pair, will be barred from practicing law for a year, a Superior Court judge has ruled." Shortly thereafter, The Middletown Press, New Haven Register, The Register Citizen, and The Hour all published similar articles (2015 articles) reporting on the suspension decision.[2]

On May 2, 2017, nearly two years after the publication of the 2015 articles, our Supreme Court reversed the suspension decision on statute of limitations grounds. See *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 393, 159 A.3d 220 (2017). Kauffman wrote an additional article detailing the Supreme Court's decision. M. Kauffman, "Attorney's Suspension Overturned," Hartford Courant, April 27, 2017, p. B4. In August 2017, the plaintiff commenced the present action by way of a nineteen count complaint dated July 27, 2017, against ten defendants claiming that they defamed him by publishing the 2015 articles.[3] Specifically, the plaintiff argued that the 2015 articles' use of the word "impersonating" to describe his actions was "false, misleading and defamatory," and that the 2015 articles failed to "mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant, never identifying himself as an investigating police officer," which, the plaintiff argued, "painted an incomplete and misleading account of the incident . . . ." The plaintiff claimed that he "sustained damages, and continues to sustain damages, on account of said publications." The plaintiff filed an amended complaint dated September 27, 2017, in which he brought counts against each defendant for defamation and false light invasion of privacy. The counts alleged that (1) the defendants published substantially similar defamatory statements in the 2015 articles when reporting on the disciplinary actions and the suspension decision and (2) the 2015 articles constituted an invasion of his privacy.

On February 23, 2018, the defendants filed answers and simultaneous motions for summary judgment. In their answers, the defendants admitted that they had published the 2015 articles but denied that the plaintiff sustained damages. They also asserted numerous special defenses, including the fair report privilege. Their motions for summary judgment focused on that privilege as a bar to the plaintiff's claims. On February 14, 2019, the trial court rendered summary judgment as to all the defendants in this appeal. The trial court agreed with the defendants that the fair report privilege barred the plaintiff's claims because the defendants fairly and accurately reported on the suspension decision. On March 6, 2019, before filing this appeal, the plaintiff sought to reargue and for reconsideration of the summary judgment decision. The grounds for reconsidera-

tion were that (1) the defendants had to prove reliance on a government source for the fair report privilege to apply and (2) the plaintiff's right of redress for injuries to his reputation, guaranteed by article first, § 10, of the Connecticut constitution, superseded the fair report privilege. The court denied the motion to reargue and for reconsideration on March 20, 2019.

On April 7, 2019, the plaintiff appealed from the summary judgment decision. On June 28, 2019, the plaintiff filed a motion seeking an articulation of the court's alleged failure to address his argument that his right to remedy injury to his reputation under the Connecticut constitution, including his right to a jury trial on such a claim, was superior to the fair report privilege. On October 17, 2019, the court provided an articulation of its summary judgment decision. In the articulation, the court explained that the plaintiff's state constitutional claims had been inadequately briefed because, among other things, they contained no analysis of the factors outlined in *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992). Additional facts will be set forth as necessary.

I

The plaintiff claims that the evidence supporting the defendants' motions for summary judgment was insufficient because it was improperly authenticated. Specifically, he argues that the defendants "failed to submit supporting proof of required facts by means of affidavits based on personal knowledge, certified transcripts of testimony under oath, or any other proof in a form rendering it admissible at trial to show that there was no genuine issue as to any material fact and that each such defendant was entitled to judgment as a matter of law, as required by Practice Book § 17-45." The defendants argue that the plaintiff never raised such an argument before the trial court and, therefore, that it was not preserved properly for our review. We agree with the defendants.

Our review of a trial court's decision to grant a motion for summary judgment is well settled. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of

fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment].'' (Citation omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

The record reflects that the plaintiff did not object to any of the evidence offered by the defendants in support of their motions for summary judgment on the ground that such evidence would be inadmissible at trial. Although the plaintiff's memorandum of law in opposition to the defendants' motions for summary judgment states that "[the] motion does not include any affidavit citing any author's or reporter's reliance upon [the suspension decision] or any other government document," and that "[the] motion does not include any supporting affidavit attaching [the defendants'] written notes, records and/or drafts demonstrating their reliance upon any government record or proceeding regarding the preparation of the subject articles," it contains no other reference or argument with respect to the authentication issue that now makes up an entire section of the plaintiff's brief on appeal.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal." (Internal quotation marks omitted.) *Guzman* v. *Yeroz*, 167 Conn. App. 420, 426, 143 A.3d 661, cert. denied, 323 Conn. 923, 150 A.3d 1152 (2016). We repeatedly have held that "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5. Accordingly, we decline to address this claim.[4]

II

The plaintiff next claims that the trial court erred in granting the motions for summary judgment because the defendants did "not [submit] any proof of reliance on a government document as the source of the complained of publications." He argues that "[t]he naked assertions of fair report privilege without any factual verification that the authors of the complained of defamatory articles relied upon any government document, let alone [the suspension decision], are legally

insufficient to support the motions for summary judgment." We disagree.

The fair report privilege is well established. "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." 3 Restatement (Second), Torts, Report of Official Proceeding or Public Meeting § 611, p. 297 (1977). "If the report is accurate or a fair abridgment of the proceeding, an action cannot constitutionally be maintained for defamation. . . . The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se. Abuse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding." (Citation omitted.) *Burton* v. *American Lawyer Media, Inc.*, 83 Conn. App. 134, 138, 847 A.2d 1115, cert. denied, 270 Conn. 914, 853 A.2d 526 (2004); see also 3 Restatement (Second), supra, § 611, comment (a), p. 298.

The plaintiff cites only *Bufalino* v. *Associated Press*, 692 F.2d 266 (2d Cir. 1982), cert. denied, 462 U.S. 1111, 103 S. Ct. 2463, 77 L. Ed. 2d 1340 (1983), as support for this claim. In that case, the United States Court of Appeals for the Second Circuit reviewed a Pennsylvania ruling in which the trial court held that the fair report privilege applied to insulate the media defendant from liability for alleged defamatory statements. The defendant had published in certain Pennsylvania newspapers two reports that identified the plaintiff as a person with "alleged mob ties." (Internal quotation marks omitted.) Id., 270. The defendant in that case offered on appeal "a number of . . . official records which, it [argued] . . . establish financial, family, and social ties between [the plaintiff] and persons identified by state and federal officials as participants in organized crime." Id. Those records, however, were not before the trial judge, and the Second Circuit held that, "[e]ven were we to accept the accuracy of these additional records, it is apparent that [the defendant] did not rely upon them in preparing its reports, but instead discovered them in preparation for the present litigation. We believe that the lack of reliance is dispositive of the issue of [fair report] privilege." Id., 270. "We thus conclude that [the defendant] is not entitled to summary judgment on the basis of records upon which it did not actually rely." Id., 271.

*Bufalino* stands in stark contrast to the facts of the present case and lends the plaintiff no support. Here, the defendants are not relying on any materials to support their defense other than the 2015 articles and the suspension decision, all of which were before the trial court, which held that "[a]ll of the newspaper articles

may clearly be understood as reporting on a court decision. Moreover, the plaintiff cites no authority for the proposition that the defendants are obliged to submit proof of reliance on a government source in order to avail themselves of the fair report privilege." No such requirement exists under the facts of this case, where the defendants do not claim that they were relying on information outside of the decision on which they were reporting, and the plaintiff's argument to the contrary fails.

III

The plaintiff next claims that the court erred in granting the motions for summary judgment on the basis of the fair report privilege because the 2015 articles were not "fair and accurate accounts of the government document relied upon." We disagree.

"[T]he fair reporting privilege requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings . . . . The accuracy required is to the proceedings, not to the objective truth of the [alleged] defamatory charges." (Citations omitted; internal quotation marks omitted.) *Burton* v. *American Lawyer Media, Inc.*, supra, 83 Conn. App. 140. Further, the fair report privilege affords leeway to "an author who attempts to recount and popularize an . . . event. . . . The author's job is not simply to copy statements verbatim, but to interpret and rework them into the whole. . . . A fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts." (Internal quotation marks omitted.) Id., 140–41. As the trial court in the present case noted, "[t]he author of a news article reporting on a judicial decision has no duty to conduct an impartial investigation of the underlying facts of the case"— "[t]he only question is whether the news article represents a substantially accurate report of the court decision upon which it is reporting." See also *Burton* v. *American Lawyer Media, Inc.*, supra, 141–42. Additionally, "the determination of whether the contents of a newspaper article are privileged as fair reporting is an issue of law" over which we exercise plenary review. Id., 138.

Much of the plaintiff's claim concerns the 2015 articles' use of the word "impersonating" to describe his actions, the characterization of the legal advice he rendered that formed the basis of the police investigation, and certain alleged omissions regarding that investigation. He argues that the suspension decision "claimed to be the source of the claimed fair report privilege does not include . . . any finding that the plaintiff was guilty of impersonation," and that "the defendants' references in their complained of publications to 'imper-

sonation' and the plaintiff's alleged rendition of legal advice 'to ignore the police,' together with their knowing omission of the fact of the police officer's deceptive posturing as a criminal defendant, negate the application of the conditional privilege of fair report."

Having compared the 2015 articles to the suspension decision, we conclude that none of the plaintiff's allegations is sufficient to defeat the fair report privilege. First, the 2015 articles contained substantially similar language with respect to impersonation—Kauffman's article in the Hartford Courant read "Joseph Elder, a Hartford attorney who impersonated a fellow lawyer 11 years ago, spawning a long-running feud between the pair, will be barred from practicing law for a year, a Superior Court judge has ruled"; M. Kauffman, supra, "Attorney Suspended for a Year," Hartford Courant, p. B1; and the other 2015 articles reported that "[a] Connecticut judge has suspended a Hartford attorney for impersonating a fellow lawyer 11 years ago." See footnote 2 of this opinion. In comparison, the suspension decision provides that the police officer "spoke to [the plaintiff] who again misidentified himself as Attorney Spears" and that "[t]he court finds that [the plaintiff] violated rule 4.1 [of the Rules of Professional Conduct] by misrepresenting himself to a third person . . . . In addition, the court finds that he failed to correct the misrepresentation at any time," and that when the officer called the plaintiff, the officer "identified himself as a prospective client and [the plaintiff] identified himself as Attorney Spears." *Disciplinary Counsel* v. *Elder*, supra, Superior Court, Docket No. CV-15-6057682-S. Use of the word "impersonating" in the news articles accurately describes the conduct detailed in the suspension decision.

Second, although the 2015 articles omit the court's finding that when the plaintiff was first called by the police officer, that officer identified himself not as a police officer but as a prospective client, "[a]s long as the matter published is substantially true, [a media defendant is] constitutionally protected from liability for a false light invasion of privacy, regardless of its decision to omit facts that may place the plaintiff under less harsh public scrutiny." *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 132, 448 A.2d 1317 (1982). The statement that the plaintiff was suspended for "impersonating" Spears was substantially true even with that detail omitted.

Additionally, we agree with the trial court that the 2015 articles do not "[advance] the proposition that [the plaintiff] had advised the [suspect] to ignore the police . . . ." (Internal quotation marks omitted.) Instead, as the court noted, they accurately reported that the *officer* was "intent on finding out who had advised the [suspect] to ignore the police," that the suspect had "entered the home based upon what he claimed to be

the advice of his counsel," and that the police officer "then attempted to find out the name of the attorney that had given [the suspect] the advice to enter the property under the belief that the attorney had committed an offense and that he had violated ethical canons." (Emphasis omitted; internal quotation marks omitted.) Those statements are substantially fair, true, and accurate, and, accordingly, they are protected by the fair report privilege.

Finally, the plaintiff argues that a quotation attributed to Spears that "every judge, appellate court and jury" had concluded that the plaintiff impersonated Spears, which was republished in the 2015 articles, "did not come from any government document or proceeding" and, therefore, is unprotected by the fair report privilege.[5] (Internal quotation marks omitted.) Although Spears' quote was not in the suspension decision, that deviation has little effect on our analysis. As our Supreme Court stated in *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 320, 477 A.2d 1005 (1984), "[a]ny deviations from or embellishments upon the information obtained from the primary sources relied upon were miniscule and can be attributed to the leeway afforded an author who attempts to recount and popularize an . . . event." (Internal quotation marks omitted.) In light of our determination that use of the word "impersonating" accurately described the plaintiff's conduct as detailed in the suspension decision, we are not persuaded that the quotation attributed to Spears renders the 2015 articles substantially inaccurate such that it would remove them from the umbrella of the fair report privilege. The pertinent issue in this case is whether the 2015 articles represented a substantially accurate account of the judicial decision. Because we conclude that they did, the plaintiff's argument fails.

IV

The plaintiff's next claim is that the court erred in granting the motions for summary judgment because the defendants did not submit "any evidence to rebut the plaintiff's claims of malice" and the plaintiff was "entitled, in any event, to a trial on the merits as to his claims of malice." We disagree.

In its memorandum of decision, the court stated that "[t]he argument that malice defeats the fair report privilege is . . . unavailing, as it relies on the proposition that the [2015] articles are not fair and accurate renditions of the [suspension decision]. The court has found to the contrary." In *Burton*, this court stated that, "[i]f the report is accurate or a fair abridgment of the proceeding, an action cannot constitutionally be maintained for defamation. . . . The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se. Abuse of the privilege takes place, therefore,

when the publisher does not give a fair and accurate report of the proceeding." (Citation omitted.) *Burton* v. *American Lawyer Media, Inc.*, supra, 83 Conn. App. 138. Because we hold that the 2015 articles were fair and accurate abridgements of the suspension decision, the plaintiff's claim of malice fails as a matter of law. Accordingly, the defendants were not required to rebut the plaintiff's claim, and the plaintiff was not entitled to a trial on its merits.

## V

Finally, the plaintiff argues that the court erred in granting the motions for summary judgment in favor of the defendants because "such summary adjudication [constituted] a violation of his state constitutional right of redress for injuries to his reputation guaranteed by article first, § 10, of the constitution of . . . Connecticut, and of his right to a trial by jury on his claims for redress for injuries to his reputation . . . ." We disagree.

The trial court addressed this issue in its articulation dated October 17, 2019, and explained that it did not consider the plaintiff's state constitutional law claims because they were inadequately briefed. Specifically, the court stated that "[t]he [plaintiff] provides the identical argument regarding article first, § 10, in the various opposition memoranda to the defendants' motions for summary judgment that include a history of § 10 and other sections of article first of the constitution of Connecticut, a discussion of commentary related to the importance of reputation and honor, a reference to the English common-law practice of conducting jury trials in libel cases and a discussion of the importance of redress for injury to reputation. What the plaintiff did not do in his various memoranda was to provide the court with an identification of the precise contours of the protection afforded by article first, § 10. Neither did the plaintiff offer any analysis of how to address tension between the article first, § 10 right to a remedy by due course of law for injury to reputation and the fair reporting privilege. While any analysis of the competing weight to be provided to the article first, § 10 remedy by due course of law and the fair reporting privilege requires discussion of the nature and source of the privilege, none was provided by the [plaintiff]." Additionally, the court noted that "the [plaintiff's] memoranda are also bereft of any mention of the factors articulated in *State* v. *Geisler*, [supra, 222 Conn. 685][6] that must be applied to analyze Connecticut constitutional claims and which permit a reasoned and principled consideration of the meaning and contours of article first, § 10." (Footnote added; footnote omitted.)

The plaintiff's state constitutional claim on appeal is virtually identical to his arguments in previous memoranda that were before the trial court. He provides no analysis of the nature and source of the fair report

privilege, which the trial court correctly noted would be required for us to construe this claim. We disagree, however, with the trial court's statement that "failure to provide an analysis of the constitution of Connecticut under *Geisler* renders such claims unreviewable" in this context. *Geisler* analysis is indeed required when a litigant claims that our state constitution affords broader protection than the United States constitution,[7] but such analysis is not required when the provision of the state constitution invoked has no federal analog. In those cases, as in the present case, a party does not necessarily need to conduct a *Geisler* analysis to state a legally sufficient claim under our state constitution. Regardless, however, the trial court concluded correctly that the plaintiff's state constitutional claims were inadequately briefed.

Moreover, we are not persuaded by the plaintiff's claim that his "state constitutional right of redress for injuries to his reputation guaranteed by article first, § 10, of the constitution of . . . Connecticut trumped the later developed judicially created common-law fair report privilege." We are guided in our analysis by the *Geisler* factors, which, although not required to construe this claim, are "useful in analyzing the scope of a right guaranteed by the state constitution that has no federal analog." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 272 n.26, 990 A.2d 206 (2010).

Article first, § 10, of our state constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The plaintiff claims that "[t]he Connecticut constitution does not provide that only 'some' injuries to reputation are subject to redress in our courts. It does not provide an exception [that] allows defamers to publish libelous reports without consequence so long as they cloak their deeds with an assertion that their source is a government document or official." Although it is true that the fair report privilege is not written into the Connecticut constitution, the text of article first, § 10, does not support the plaintiff's argument. The crux of this issue is that the 2015 articles were a substantially fair and accurate rendition of the suspension decision, which was a matter of public record. The 2015 articles may well have caused the plaintiff injury to his reputation in the lay sense, but they did so by accurately and fairly reporting on a matter of public record. Therefore, there was no legally cognizable injury to the plaintiff's reputation that would implicate the text of article first, § 10, of our state constitution. "The existence of a *false* and defamatory statement is a prerequisite to a party's prevailing in a case for libel." (Emphasis added.) *Burton* v. *American Lawyer Media, Inc.*, supra, 83 Conn.

App. 137.

With respect to Connecticut history, we are not persuaded that the plaintiff's references to commentators on the Connecticut constitution provide any relevant historical insight into the intent of our constitutional forebears regarding application of the fair report privilege under these circumstances. Additionally, with respect to Connecticut precedent, the plaintiff acknowledges that the fair report privilege is a common-law privilege, but, as the trial court noted, he "did not bring to the court's attention any appellate decision that addresses the meaning and breadth of the article first, § 10 remedy by due course of law for injury to reputation." Likewise, the plaintiff cites no Connecticut case law that supports his claim that the protection of article first, § 10, "trumps" the fair report privilege. The plaintiff similarly cites no persuasive federal or sister state authority that would call the validity of the privilege into question.

Finally, with respect to public policy, it is well established that the basis of the fair report privilege is "the public's interest . . . in having information made available to it as to what occurs in official proceedings and public meetings." (Internal quotation marks omitted.) *Burton* v. *American Lawyer Media, Inc.*, supra, 83 Conn. App. 138; see also 3 Restatement (Second), supra, § 611, comment (a), p. 297. The plaintiff counters that "the general public's need for the public media (e.g., newspapers, television news, radio reports) to be its source of information as to government activities as the foundational justification for the fair report privilege clearly has eroded substantially since the privilege was initially promoted. There are now literally millions of news sources available to individuals via the Internet. . . . The public no longer depends upon [public media], nor can it claim its public service role as being the eyes and ears of citizens absent from public proceedings." The plaintiff provides no citation to any authority substantiating those claims, nor does he provide analysis with respect to why the widespread availability of news sources would support his suggested application of article first, § 10, of the state constitution to defeat the fair report privilege. There is simply nothing that supports the plaintiff's assertion that the fair report privilege is inconsistent with article first, § 10, of our state constitution. The trial court properly rendered summary judgment in favor of the defendants.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hearst Media Services Connecticut, LLC, was incorrectly named in the complaint as "The Hearst Corporation" and will be referred to herein as such. The Hearst Corporation is the current publisher of several Connecticut newspapers, including The Middletown Press, New Haven Register, The (Torrington) Register Citizen, and The (Norwalk) Hour. The first three newspapers previously were published by 21st Century Media Newspaper, LLC, which is owned by 21st Century Media, LLC, before The Hearst Corporation

acquired the assets of 21st Century Media, LLC, in June, 2017. Kauffman was at all relevant times employed by the Hartford Courant, which is not a party to this appeal.

We note that counsel has indicated that CBS Radio, Inc., as successor in interest to CBS Corporation, is now known as Entercom Media Corp. We refer herein to that entity as CBS Radio, Inc., as that was the name of the entity at the time it filed its motion for summary judgment and the court rendered its decision thereon.

The defendant The Sun Publishing Company did not file a motion for summary judgment and is not involved in this appeal. The defendant The Day Publishing Company filed a separate motion for summary judgment on April 2, 2019, which was granted on November 26, 2019. The plaintiff has not taken an appeal of that summary judgment decision. The defendant Wesley Spears filed a separate motion for summary judgment on February 17, 2021, which has not yet been ruled on, and he is not involved in this appeal. The plaintiff withdrew his complaint against the defendant Comcast Corporation on May 2, 2019, and he withdrew his complaint against the defendant The Record-Journal Publishing Company on December 16, 2019.

[2] See "Hartford Lawyer Suspended for Impersonating Fellow Lawyer," The Middletown Press, August 3, 2015, p. A6; "Hartford Lawyer Suspended for Impersonating Fellow Lawyer," The Register Citizen, August 3, 2015, p. A6; "Hartford Lawyer Suspended for Impersonating Lawyer," The Hour, August 2, 2015, p. 2; "Connecticut Lawyer Suspended for Impersonating Colleague," New Haven Register, August 1, 2015.

[3] The plaintiff did not allege that Kauffman's article reporting on the Supreme Court's May 2, 2017 decision was defamatory.

[4] In any event, we fail to see the import of the plaintiff's claim in light of the defense relied on by the defendants in their summary judgment motions. As set forth more fully in this opinion, the fair report privilege requires a comparison of the statements at issue with the decision or proceeding on which those statements report. There is no dispute over the statements at issue; they are the published articles that are the basis of the plaintiff's complaint. There also is no dispute as to the proceeding on which those articles report; it was the disciplinary hearing before Judge Robaina that resulted in the published opinion on which the defendants reported.

[5] With respect to CBS Radio, Inc., this claim is not properly preserved. The quotation attributed to Spears was not specifically alleged in the plaintiff's complaint as a defamatory statement as to any defendant but Spears, and it was not addressed by the trial court. The plaintiff did, however, in his memoranda in opposition to the motions for summary judgment filed by Kauffman, 21st Century Media Newspaper, LLC, 21st Century Media, LLC, and The Hearst Corporation, argue that the quotation attributed to Spears was not from a government document or proceeding and that "there [is] no fair report privilege for a reporter's non-government sources." No such argument appears in his memorandum in opposition to the motion for summary judgment filed by CBS Radio, Inc. Accordingly, we address this issue on its merits only with respect to Kauffman, 21st Century Media Newspaper, LLC, 21st Century Media, LLC, and The Hearst Corporation.

[6] The six *Geisler* factors are: "(1) the text of the operative constitutional provisions; (2) related Connecticut precedents; (3) persuasive relevant federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of applicable economic and sociological norms, or as otherwise described, relevant public policies." *State* v. *Lockhart*, 298 Conn. 537, 547, 4 A.3d 1176 (2010).

[7] See, e.g., *State* v. *Allan*, 131 Conn. App. 433, 435 n.2, 27 A.3d 19 (2011) (claim of violation of rights under article first, § 8, of state constitution not reviewed due to failure to provide analysis required by *Geisler*), aff'd, 311 Conn. 1, 83 A.3d 326 (2014); *State* v. *Knight*, 125 Conn. App. 189, 193 and n.6, 7 A.3d 425 (2010) (failure to provide independent analysis under *Geisler* of rights provided by article first, §§ 8 and 9, of constitution of Connecticut resulted in court declining to consider claim), cert. denied, 300 Conn. 927, 16 A.3d 704 (2011).

[8] Additionally, summary judgment does not violate a party's constitutional right to a jury trial where no facts are in dispute. See *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 330, 898 A.2d 197 ("[T]he plaintiff . . . met the heavy burden and strict standard of demonstrating its entitlement to summary judgment and therefore eliminated the delay and expense of a trial where there was no real issue to be tried. . . . As such, the defendants' right to a jury trial . . . was not implicated." (Citation omitted; internal

quotation marks omitted.)), cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

———————————————